UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAMELA LOUISE AMACHER, ) | No. CV 13-4995-PLA |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ) ACTING COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 12, 2013, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 19, 2013, and September 3, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 7, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 31, 1962. [Administrative Record ("AR") at 122-23, 127-28.] She has a twelfth grade education and past relevant work experience as a fast food manager. [AR at 45, 59, 63-65, 96-99, 240-41, 430.]

On February 8, 2010, and February 28, 2010, respectively, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since August 24, 2006. [AR at 32, 192-205, 229, 237, 240; Joint Stipulation ("JS") at 2.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 32, 129-33, 139-45.] A hearing was held on October 18, 2011, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 32, 53-121.] A vocational expert ("VE") also testified. [AR at 32, 95-116.] On January 20, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from August 24, 2006, through the date of the decision. [AR at 32-47.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 11-13, 24.] When the Appeals Council denied plaintiff's request for review on April 11, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)

(internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, August 24, 2006.[1] [AR at 34.] At step two, the ALJ concluded that plaintiff has the severe impairment of "L5 on S1 spondylolisthesis; degenerative disc disease of the lumbar spine; obesity; and carpal tunnel syndrome." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[2] [AR at 36.] The ALJ further

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. [AR at 34.]

[2] See 20 C.F.R. pt. 404, subpt. P, app. 1.

4

found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "less than the full range of sedentary work" as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a).[4] [Id.] Specifically, the ALJ determined:

> [plaintiff] can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can stand and/or walk for six hours out of an eight-hour workday with regular breaks. She can sit for six hours out of an eight-hour workday with regular breaks. She is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. She is precluded from climbing ladders, ropes, or scaffolds. She can occasionally stoop. She can frequently balance, kneel, crouch, crawl, and climb ramps or stairs. She can frequently handle and finger with her bilateral upper extremities.

[AR at 36-37.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 45.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as a bench assembler, small products; telephone solicitor; and cashier II. [AR at 46.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from August 24, 2006, through the date of the decision. [AR at 32, 47.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ's decision with respect to plaintiff's RFC is not supported by substantial evidence, and (2) the ALJ erred in rejecting plaintiff's subjective symptom testimony.

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) & 416.967(a).

[JS at 5-9, 14-19, 26-27.] As explained below, the Court agrees with plaintiff in part and remands for further proceedings.

**A.     EVALUATION OF MEDICAL EVIDENCE**

Plaintiff contends that the ALJ's decision with respect to plaintiff's RFC is not supported by substantial evidence.    [JS at 5-9, 14-15.]  Specifically, plaintiff argues that the ALJ "failed to properly evaluate the medical evidence of record in assessing [her] RFC."  [JS at 5.]  Plaintiff additionally argues that the opinion of the examining physician, if properly credited, would warrant "a finding of disab[ility]" or "erode the sedentary occupational base[;]" that the ALJ did not properly take plaintiff's obesity into account when assessing her RFC; and that the ALJ erred in evaluating "the impact [plaintiff]'s carpal tunnel syndrome would have on her RFC."  [JS at 6-9, 14-15.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a[n] . . . examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at

6

725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

On November 29, 2007, examining physician[5] Dr. Paul Wakim performed a comprehensive orthopedic evaluation of plaintiff. [AR at 214-26, 428-40.] After reviewing plaintiff's medical records, obtaining x-ray images of plaintiff's spine, and conducting a physical examination, Dr. Wakim diagnosed plaintiff with lumbar strain with associated myofascitis, industrial injury, largely resolved; history of right lower extremity radiculopathy, resolved; degenerative disc disease lumbar spine, non-industrial; Grade I, borderline Grade II spondylolisthesis L5-S1, non-industrial; mild to moderate insomnia, secondary to low back pain; and psychological confirmation of major depressive disorder and its ramifications, considered industrial. [AR at 214, 223, 428, 437.] Dr. Wakim opined that plaintiff retained the following RFC:

> [plaintiff] retains maximum capacity to lift and/or carry 30 pounds, to frequently lift and/or carry 10 pounds, and occasionally lift and/or carry 20 pounds and stand and/or walk less than five hours per an eight hour day, sit a total of three hours per an eight hour day. Pushing and pulling including hand or foot control should be relatively unlimited. [Plaintiff] should be restricted to occasional twisting at the waist, stooping and bending over at the waist. [Plaintiff] should also only be required occasional climbing [sic]. Otherwise she can frequently balance, reach, handle, finger, feel, see, hear and speak without difficulty. The above activities are limited due to the inherent instability in the L5-S1 motion segment due to spondylolisthesis and the degenerative disc disease which is present and non-industrial. [Plaintiff] can now[6] return back to her occupation with those limitations. As such, a job does not exist and she would be an appropriate candidate for vocational rehabilitation in the form of education vouchers.

---

[5] Dr. Wakim was a Qualified Medical Examiner ("QME") in plaintiff's workers' compensation case. [See AR at 214, 428]; see also Lee v. Astrue, 2012 WL 1968893, *5 (C.D. Cal. June 1, 2012) (discussing the opinions of an Agreed Medical Examiner and a Qualified Medical Examiner, and finding that "[b]oth of these physicians were examining physicians in [c]laimant's workers' compensation case."). [See also AR at 39, n.2 ("A QME is a neutral examining physician ... [who] performs a face-to-face evaluation as well as a review[ of] any and all medical documentation pertaining to the work[-]related injury.").]

[6] The Court questions the accuracy of the transcription. While indicating that plaintiff can "now" return to her previous occupation, Dr. Wakim in the following sentence appears to conclude, inconsistently, that no jobs exist for plaintiff given her limitations. This seeming inconsistency would be resolved if Dr. Wakim intended that the medical record read "not" instead of "now." [AR at 225, 439.] Resolution of this issue, however, does not impact the Court's decision herein.

7

[AR at 225, 439.]

On April 27, 2010, nonexamining State agency physical medical consultant Dr. R. Jacobs completed a physical residual functional capacity assessment of plaintiff. [AR at 328-35.] Dr. Jacobs indicated that plaintiff was limited to lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking, with normal breaks, for "about 6 hours in an 8-hour workday[;]" sitting, with normal breaks, for a total of "about 6 hours in an 8-hour workday[;]" and no climbing of ladders, ropes, or scaffolds. [AR at 329-32.] Dr. Jacobs opined that plaintiff retained the RFC to do medium work. [AR at 335.]

On August 24, 2010, nonexamining State agency physical medical consultant Dr. P. Ryan affirmed Dr. Jacobs' previous assessment that plaintiff is limited to a range of medium work. [AR at 362.]

In his decision, in assessing plaintiff's RFC, the ALJ "considered and [gave] significant weight, but not full weight, to the opinions of the State agency physical medical consultants," who, upon initial review and reconsideration, "opined [plaintiff] should be limited to a range of medium exertional work." [AR at 43.] "However, in order to give [plaintiff] the benefit of the doubt, the [ALJ] ... reduced [plaintiff's] residual functional capacity to a range of sedentary work given the objective clinical and diagnostic findings ... indicating spondylolisthesis at L5-S1, degenerative disc disease [of plaintiff's] lumbar spine, and symptoms of carpal tunnel syndrome." [Id.] The ALJ gave "some weight" to the opinion of Dr. Wakim, whose assessment he noted was "given in the context of [plaintiff]'s workers' compensation claim," and who "essentially opined [that plaintiff] could perform a range of light exertional work with some function-by-function limitations. ... Dr. Wakim determined [that plaintiff] could stand and/or walk for five hours in an eight-hour workday, as well as sit for a total of three hours in an eight-hour workday." [AR at 44.] The ALJ found that Dr. Wakim's "assessment of [plaintiff's RFC] is slightly less than the range of light exertional work. Thus, in order to once more give [plaintiff] the benefit of the doubt, [the ALJ] has accordingly reduced [plaintiff's] residual functional capacity to the sedentary work level." [Id.]

Under the circumstances, the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Wakim's opinion that plaintiff was limited to "stand[ing] and/or walk[ing] less than five

8

1 hours per an eight hour day," and "sit[ting] a total of three hours per an eight hour day." [AR at
2 225, 439.] As an initial matter, the ALJ concluded that there is "no medical source statement that
3 suggested functional limitations more restrictive than those functional limitations included in the
4 [RFC] determined herein." [AR at 44.] This mischaracterizes the record, as Dr. Wakim opined
5 that plaintiff was limited to standing and/or walking for <u>less</u> <u>than</u> five hours and sitting for a <u>total</u>
6 of three hours in an eight-hour workday, which is in fact <u>more</u> restrictive than the RFC arrived at
7 by the ALJ, limiting plaintiff to "stand[ing] and/or walk[ing] for six hours out of an eight-hour
8 workday," and "sit[ting] for six hours out of an eight-hour workday." [<u>Compare</u> AR at 36 <u>with</u> AR
9 at 225, 439]; <u>see</u> <u>Reddick</u>, 157 F.3d at 722-24 (ALJ's "findings were unsupported by substantial
10 evidence based on the record as a whole" when "[i]n essence, the ALJ developed his evidentiary
11 basis by not fully accounting for the context of materials or all parts of the testimony and reports
12 [and h]is paraphrasing of record material is not entirely accurate regarding the content or tone of
13 the record."); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the
14 power of the [Commissioner] to make findings ... and to weigh conflicting evidence, he cannot
15 reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record
16 that suggests an opposite result.") (internal citation omitted).

17 Next, to the extent the ALJ suggests that Dr. Wakim's opinion was not entitled to as much
18 weight as those of the nonexamining physicians because it was "given in the context of [plaintiff]'s
19 workers' compensation claim," this is not a specific or legitimate reason to discount a medical
20 opinion. See <u>Booth v. Barnhart</u>, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) ("ALJ may not
21 disregard a physician's medical opinion simply because it was initially elicited in a state workers'
22 compensation proceeding, or because it is couched in the terminology used in such proceedings");
23 <u>Coria v. Heckler</u>, 750 F.2d 245, 248 (3d Cir. 1984) ("the ALJ should evaluate the objective medical
24 findings set forth in the medical reports for submission with the worker's compensation claim by
25 the same standards that s/he uses to evaluate medical findings in reports made in the first
26 instance for the Social Security claim"). The ALJ gave no valid reason for his rejection of Dr.
27 Wakim's opinion with regard to plaintiff's limitation to "stand[ing] and/or walk[ing] less than five
28

hours per an eight hour day, [and] sit[ting] a total of three hours per an eight hour day." [See generally, AR at 40-44; see also AR at 225, 439.]

Additionally, the ALJ's failure to include Dr. Wakim's limitation to standing and/or walking for less than five hours and sitting for a total of three hours in an eight-hour workday was not harmless because the VE's testimony that plaintiff is capable of performing work available in the national and regional economies was based on the ALJ's hypotheticals, which, with regard to sitting and standing, included exertional limitations to "a range of light work activity"[7] [AR at 99], a "range of sedentary work"[8] [AR at 100], and a limitation to sitting or standing "at least 30 minutes per time." [AR at 107.] Because the ALJ did not ask the VE whether any work could be performed by a person with the limitations assessed by Dr. Wakim, i.e., standing and/or walking for less than five hours and sitting for a total of only three hours in an eight-hour workday, there is no evidence in the record that plaintiff could perform any work in the national and regional economies if she in fact has such limitations.

Under the circumstances, the ALJ erred in his rejection of Dr. Wakim's opinion and remand is warranted.[9]

---

[7] Light work is defined as involving "a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R §§ 404.1567(b), 416.967(b).

[8] Sedentary work "involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R §§ 404.1567(a), 416.967(a).

[9] Plaintiff's argument that the ALJ erred in considering the impact of her carpal tunnel condition on her RFC does not, on its own, warrant remand. First, the ALJ properly assessed plaintiff's manipulative limitations based on the existing record. See 20 C.F.R. § 404.1545(a) ("We will assess your [RFC] based on all the relevant evidence in your case record."). None of the evidence submitted by plaintiff addressing her carpal tunnel symptoms included any functional limitations. [See, e.g., AR at 368 (July 15, 2010, Progress Note calling for the use of a wrist brace and prescribing ibuprofen); 401 (July 16, 2010, Progress Note assessing bilateral carpal tunnel syndrome and calling for "EMG/NCV Upper and L[o]wer Extremities"); 400, 409 (August 13, 2010, Progress Note calling for "[b]ilateral wrist bracing").] The ALJ's assessment that plaintiff is limited to "frequent[] handl[ing] and finger[ing] with her bilateral upper extremities" is thus supported by substantial evidence. [AR at 37]; Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

(continued...)

1  **B.  CREDIBILITY**

2  Plaintiff contends that the ALJ erred in rejecting plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 5, 15-19, 26-27.]

3  "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

---

[9](...continued)
Second, the ALJ was under no duty to further develop the record. See McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Here, the ALJ held open the administrative record for 30 days in order to receive additional medical records -- in particular, records regarding plaintiff's carpal tunnel syndrome [see AR at 120], which plaintiff submitted to the ALJ for consideration. [See, e.g., AR at 368, 396-97, 401, 407, 415.] The ALJ thus satisfied any duty to develop the record. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (holding that ALJ fulfilled his duty to develop the record when he "voiced his concerns to [the claimant and counsel], requested an additional inquiry into the basis for [a medical opinion] and explained that he would keep the record open so that it could be supplemented by responses from [the physician].").
Based on the Court's remand, the Court will not address plaintiff's additional contentions in her first disputed issue. [JS at 5-9, 14-15.]

Where, as here, the ALJ did not find "affirmative evidence" of malingering [see, generally, AR at 32-47],[10] the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d at 1040 (Where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so."). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In a report completed by Dr. Wakim following his physical examination of plaintiff on November 29, 2007, Dr. Wakim noted:

> [Plaintiff] has positive tenderness to palpation along the thoracolumbar junction all the way down to the sacrum, which is quite exaggerated on examination to light touch. [Plaintiff] has no palpable muscle spasm, but exquisite tenderness to palpation of paraspinal muscles bilaterally at the lumbar spine. It seems exaggerated with the light pressure applied.

[AR at 221, 435.] In the same report, Dr. Wakim opined that plaintiff "retains maximum capacity to lift and/or carry 30 pounds, to frequently lift and/or carry 10 pounds, and occasionally lift and/or

---

[10] The ALJ cited record evidence "indicat[ing] an attempt by [plaintiff] to exaggerate the severity of her symptoms." [AR at 39.] However, nowhere did the ALJ assert, let alone find, that the record contained "affirmative evidence" of malingering. See generally Palacios v. Astrue, 2011 WL 782342 (C.D. Cal. Feb. 28, 2011) (despite finding no evidence of malingering, ALJ properly found the plaintiff's exaggerated symptoms to be "clear and convincing" reason to reject the plaintiff's statements).

12

carry 20 pounds," as well as to "stand and/or walk less than five hours per an eight hour day," and "sit a total of three hours per an eight hour day." [AR at 225, 439.]

In a physical residual functional capacity assessment of plaintiff on April 27, 2010, Dr. Jacobs indicated that plaintiff was limited to lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking, with normal breaks, for "about 6 hours in an 8-hour workday[;]" sitting, with normal breaks, for a total of "about 6 hours in an 8-hour workday[;]" and no climbing of ladders, ropes, or scaffolds. [AR at 329-32.] Dr. Jacobs further opined that plaintiff retained the RFC to do medium work. [AR at 335.] Dr. Jacobs' opinion was affirmed on August 24, 2010, by nonexamining State agency physical medical consultant Dr. Ryan. [AR at 362.]

At the hearing on October 18, 2011, plaintiff testified that she was unable to lift and carry a gallon of milk or a five-pound bag of sugar, that she could sit for only "[m]aybe ... an hour" during an eight-hour workday, that she could stand for "30 minutes" over the course of an eight-hour workday (for only "[t]en to fifteen minutes" at one time), and that she could walk only "half-a-block" at one time (and can walk for only "[m]aybe 20" minutes out of an eight-hour workday). [AR at 70-72.] She reported that she could not stoop, had difficulty crouching or crawling, was unable to kneel, and could not climb ramps, ladders, ropes, or scaffolding. [AR at 73.]

In his decision, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" [AR at 40], which "satisfie[s] the first prong of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); see also id. ("After finding that Vasquez has a back disorder which is a severe impairment, the ALJ acknowledged that Vasquez's injuries could reasonably be expected to produce *some* of the pain and other symptoms alleged.") (internal quotation marks omitted, italics in original). The ALJ went on to find, however, that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the assessed RFC. [AR at 40.]

The ALJ rejected plaintiff's subjective symptom testimony because he found that: (1) the "record includes evidence strongly suggesting that [plaintiff] has exaggerated symptoms and limitations[;]" (2) plaintiff's "allegations are grossly inconsistent with the objective medical opinions

13

contained in the evidence of record[;]" (3) "[d]espite [plaintiff]'s alleged symptoms of debilitating pain, there is no evidence of atrophy in [plaintiff]'s lower back, lower extremities, or upper extremities[;]" and (4) plaintiff "portrayed no evidence of debilitating pain or discomfort while testifying at the hearing." [AR at 39-40.]

The ALJ provided clear and convincing reasons for rejecting plaintiff's subjective allegations. First, the ALJ's finding that plaintiff's allegations were undermined by her attempt to exaggerate the severity of her symptoms [see AR at 39] is supported by substantial evidence. Specifically, the ALJ noted that Dr. Wakim found that plaintiff "exaggerated the tenderness ... on palpation at the thoracolumbar junction down to the sacrum as well as at the paraspinal muscles bilaterally at the lumbar spine because light pressure was utilized to palpate." [Id.] This is a clear and convincing reason. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ properly discredited plaintiff's subjective complaints based on her tendency to exaggerate her symptoms); see also Palacios, 2011 WL 782342, *5 ("ALJ rejected [p]laintiff's statements based on [the physician's] observation that [p]laintiff exaggerated his symptoms of pain. This is a clear and convincing reason."). As a result, the ALJ justifiably concluded that "the information provided by [plaintiff] may not be entirely credible." [AR at 39.]

Second, the ALJ's finding that plaintiff's "allegations are grossly inconsistent with the objective medical opinions contained in the evidence of record" [AR at 39] is supported by substantial evidence. While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider). With respect to plaintiff's physical impairments, the ALJ noted that plaintiff alleged "a total inability to perform any stooping activity as well as an inability to perform any crouching, crawling or kneeling," as well as an inability to "lift as little as five pounds, stand for more than 30 minutes to one hour during an eight-hour workday, or walk for more than 20 minutes during an eight-hour workday." [AR at 39.] The ALJ found these allegations "grossly

inconsistent" with the objective medical opinions in the record. [Id.] In particular, he wrote that Dr. Wakim opined that plaintiff could:

> lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk up to five hours per an eight-hour day; sit a total of three hours per an eight-hour day; she could occasionally twist at the waist, and stoop and bend over at the waist; she could occasionally climb; and she could frequently balance, reach, handle, finger, feel, see, hear, and speak without difficulty.

[AR at 39.] The ALJ further noted that "more recent[]" opinions from State agency physical medical consultants indicated that plaintiff "could perform work at the medium exertional level as well as frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl." [Id.; see also AR at 43.] Thus, substantial evidence supports the ALJ's determination that plaintiff's assertion that she could not, for example, perform any stooping, crouching, crawling, or kneeling, is "grossly inconsistent" with the objective medical opinion evidence in the record. [AR at 39.]

Third, the ALJ's observation of a lack of "evidence of atrophy in [plaintiff]'s lower back, lower extremities, or upper extremities," and inference that plaintiff's pain "has not altered her use of the muscles therein to an extent that has resulted in atrophy," is supported by substantial evidence. [AR at 39-40. See, e.g., AR at 316, 371 (Progress Note, dated January 8, 2010, by Dr. Peter Matter, indicating, among other things, no musculoskeletal atrophy)]; see also Gonzalez v. Shalala, 990 F.2d 1257 (9th Cir. 1993) (unpublished disposition) ("[T]he ALJ noted that ... there was no diffuse atrophy noted to accompany [plaintiff's] alleged functional limitations. ... Under our case law, [this finding, along with others, is] sufficiently specific to discredit [plaintiff]'s excess pain testimony."). See also Stiles v. Astrue, 256 Fed.Appx. 994, 997 (9th Cir. 2007) (unpublished opinion) (finding that the ALJ's conclusion, based on a review of the medical records, that the plaintiff's "subjective complaints were not borne out by the objective findings to be expected, such as muscle wasting [or] atrophy," constituted "substantial evidence"); Aguirre v. Massanari, 13 Fed.Appx. 509, 511 (9th Cir. 2001) (unpublished opinion) (finding that "no evidence of atrophy," considered along with other reasons, constituted clear and convincing reasons for the ALJ to reject plaintiff's pain-related testimony).

Finally, the ALJ properly considered his own observation that plaintiff "portrayed no evidence of debilitating pain or discomfort while testifying at the hearing." [AR at 40]; Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements" (citation omitted). Despite plaintiff's testimony that she could sit for only "[t]en to fifteen minutes" at a time, and only for one hour, in total, over the course of an eight-hour workday [AR at 71-72], the ALJ "observed [plaintiff] sit through the entire hearing, which lasted approximately 90 minutes." [AR at 40.] In "reaching the conclusion regarding the credibility of [plaintiff]'s allegations and [plaintiff]'s residual functional capacity," the ALJ gave "some slight weight" to plaintiff's "apparent lack of pain or discomfort during the hearing." [AR at 40]; Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute for medical diagnosis."); Social Security Ruling ("SSR") 96-7p,[11] 1996 WL 374186, *5 (explaining that the ALJ may "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements").

In sum, because the ALJ provided clear and convincing reasons to discount plaintiff's subjective allegations, his credibility determination must be upheld. See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986). Remand is not warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this

---

[11] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

16

1  discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke
2  v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must
3  be resolved before a determination can be made, and it is not clear from the record that the ALJ
4  would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is
5  appropriate.  See Benecke, 379 F.3d at 593-96.

6       Here, there are outstanding issues that must be resolved before a final determination can
7  be made.  However, in an effort to expedite these proceedings and to avoid any confusion or
8  misunderstanding as to what the Court intends, the Court will set forth the scope of the remand
9  proceedings.  First, the ALJ on remand will reconsider the opinion of Dr. Wakim.  [See AR at 214-
10 26, 428-40.]  In assessing the medical opinion evidence of Dr. Wakim, or any other physicians, the
11 ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any
12 portion of the opinion(s) that the ALJ rejects.  Next, if necessary, the ALJ shall reassess plaintiff's
13 RFC and determine, at step five,[12] with the assistance of a VE, whether plaintiff is capable of
14 performing other work existing in significant numbers in the regional and national economies.

15 /
16 /
17 /
18 /
19 /
20 /
21 /
22 /
23 /
24 /
25 /
26 /

---

[12] Nothing in this Order is intended to disturb the ALJ's step four finding that plaintiff is unable to perform her past relevant work.  [See AR at 45.]

17

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 30, 2014

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE